**STATE of Tennessee, Appellee,**

v.

**Perry Ricky RAY, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

April 15, 1993.

Permission to Appeal Denied by Supreme Court Sept. 7, 1993.

John E. Herbison, Nashville, on appeal for appellant.

John Harwell Dickey, Dist. Public Defender, Robert H. Stovall, Jr., and Forest Durand, Asst. Dist. Public Defenders, Fayetteville, at trial for appellant.

Charles W. Burson, Atty. Gen. Reporter, Kathy M. Principe, Asst. Atty. Gen., Nashville, W. Michael McCown, Dist. Atty. Gen., Weakley E. Barnard, Gary M. Jones and John Dickey, Asst. Dist. Attys. Gen., Fayetteville, for appellee.

## OPINION

SUMMERS, Judge.

The appellant, Perry Ricky Ray, was convicted of murder in the first degree and sentenced to life in prison. In this appeal, he presents the following issues:

I. Whether the trial court erred in denying appellant an opportunity to be heard on his request to remove the public defender as counsel.

II. Whether appellant's confession was involuntarily made and hence inadmissible.

III. Whether the prosecuting attorney was improperly permitted to argue in his opening statement that appellant "executed" the decedent.

IV. Whether the trial court erred in admitting evidence of an altercation between appellant and a relative of the victim.

V. Whether the testimony of the clinical psychologist stating that appellant did not meet the legal criteria for an insanity defense wrongly invaded the province of the jury.

VI. Whether the trial court erred in excluding certain evidence regarding appellant's contention that the victim was the first aggressor.

VII. Whether the automatic imposition of a life sentence upon conviction, in all first-degree murder cases where the state has not sought the death penalty, violates the Constitution of the State of Tennessee.

VIII. Whether the jury charge regarding premeditation and deliberation constitutes plain and prejudicial error.

The judgment of the trial court is affirmed.

## FACTS

It is uncontroverted that appellant fired the shot that killed the victim, Ty Cross.

On September 29, 1990, appellant gathered with some people in an area of Marshall County known as Jones Circle. Everyone present was drinking, and most were gambling in a dice game. There were various estimates as to the quantity of alcohol consumed by the appellant and the victim. The eyewitnesses testifying for the state indicated that appellant was not intoxicated. Appellant testified he began drinking at 2:00 p.m. and by the time of the shooting, he had consumed three or four six-packs of beer and approximately half of a half-pint bottle of whiskey.

During the course of the evening, the appellant and the victim became involved in a dice game. The victim won a point, but a dispute arose over money. Appellant took a step towards the victim, and the victim pushed him in the chest. Both men began to curse, and the victim picked up a chair as if to strike the appellant. After a few moments, the victim left with two friends; the appellant walked away in the opposite direction with Lance West.

Appellant testified that he saw the victim receive a gun from one of his friends. No gun, however, was found on the victim. Appellant then obtained a gun from Mr. West. Someone yelled "gun," and a shot was fired. The victim began to run, and appellant chased him waving the gun. The victim fell down, and a second shot was heard. The victim got back on his feet and started to run again. Appellant then shot him in the back of the head. After the shooting, appellant left the scene and went to a friend's house to call the police. Appellant was arrested and taken to the police station where he waived his Miranda rights and made a confession. In his statement, appellant contended that

the victim had been harassing him ever since he became involved in a fight with the victim's brother several weeks earlier. He claimed that on the night of the incident, the victim had hit him in the face. He also stated that he believed the victim had a gun at the time of the shooting.

## I.

In his first issue, appellant asserts that the trial court erred in not affording him an opportunity to be heard on his request to appoint new counsel.

Prior to the hearing on pretrial motions, defense counsel advised the trial court that appellant was "quite upset with the representation in this case." At the conclusion of the day's motion hearings, the court instructed appellant to address the court, at which time, the following colloquy took place:

APPELLANT: As I told you earlier, I would like to get someone else to represent me due to the fact that the Public Defender's Office has made several racial slurs, and as I said, there is a lot in this letter that shows he is not going to represent me to the best of his ability. I feel it is my right to ask for good counsel. I'm aware that the charge is serious. I need good counsel. He has not done it for me. He has said a lot of things derogatory [sic] racially. I just don't think I can be represented in a professional manner with him.

THE COURT: Are you saying the entire Public Defender's staff—there are three people in the Public Defender's Office, and I just spent a good three hours here going over some motions that they have filed on your behalf—are you saying the entire Public Defender's staff is not competent to represent you?

APPELLANT: I'm saying that the chief ... is in charge of these other guys, so they have pretty much got to go along with what he says. [H]e is the one that has made these derogatory comments. This letter is from his office. He is a public official and [the] racial comments as told in this letter shouldn't be told.

\* \* \* \* \* \*

THE COURT: This is not an issue that is going to be before this Court. [T]he legislature has mandated that the Public Defender's Office handles indigent cases in this case unless there is a good, reason or a good cause that they not be appointed. That is what I have done. If the Public Defender's Office does not perform adequately, then you have a remedy that is available to you at some later time called a post-conviction relief which you can file. . . .

\* \* \* \* \* \*

APPELLANT: I have to go to trial with the Public Defender's Office; is that what you are saying?

THE COURT: That's right.

APPELLANT: I ain't got nothing else to say.

In *State v. Gilmore*, 823 S.W.2d 566 (Tenn. Crim.App.1991), our Court addressed the circumstances in which a defendant is entitled to substitution of counsel:

When an accused seeks to substitute counsel, the accused has the burden of establishing to the satisfaction of the trial judge that (a) the representation being furnished by counsel is ineffective, inadequate, and falls below the range of competency expected of defense counsel in criminal prosecutions, (b) the accused and appointed counsel have become embroiled in an irreconcilable conflict, or (c) there has been a complete breakdown in communications between them.

*Id.* at 568–69.

A trial court must "take particular pains in discharging its responsibility to conduct these inquiries concerning substitution of counsel and waiver of counsel. Perfunctory questioning is not sufficient. This is true even when the trial judge strongly suspects that the defendant's requests are disingenuous. . . ." *United States v. Welty,* 674 F.2d 185, 187 (3d Cir.1982). *Accord McKee v. Harris,* 649 F.2d 927, 933 (2d Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *Brown v. Craven,* 424 F.2d 1166, 1170 (9th Cir.1970). In the present case, the trial court refused to hear appellant as to the specifics of his dissatisfac-

tion with counsel. In doing so, the court made it difficult to determine whether good cause existed for substitution of counsel.

 The appointment and relief of counsel rests within the sound discretion of the trial court. *State v. Rubio,* 746 S.W.2d 732, 737 (Tenn.Crim.App.1987). We respectfully submit that the trial court erred in prohibiting appellant from putting on proof concerning his motion to appoint new counsel. The alleged letter should have been admitted. We do not find, however, that appellant was prejudiced by the denial of the motion. *State v. Dykes,* 803 S.W.2d 250, 257 (Tenn.Crim. App.1990); *State v. Goodman,* 643 S.W.2d 375, 378 (Tenn.Crim.App.1982); T.R.A.P. 36(b). A review of the record indicates that appellant received effective representation from the Public Defender's Office. Furthermore, there is no indication, other than the alleged letter, that counsel was racially biased against appellant.

This issue is without merit.

## II.

 Appellant next argues that the court erred in not granting his motion to suppress the statement he made to the police. Appellant maintains he was so intoxicated at the time that his confession was not freely and voluntarily given. *See State v. Robinson,* 622 S.W.2d 62, 67 (Tenn.Crim.App.1980). The state's witnesses testified that appellant was not intoxicated during his confession. They stated that appellant exhibited no problems in walking, speaking, or understanding what officers said to him.

It is well-settled that the findings of fact of the trial court on a motion to suppress have the weight of a jury verdict and will not be reversed unless the evidence preponderates against them. *State v. Woods,* 806 S.W.2d 205, 208 (Tenn.Crim.App.1990). Here, the testimony of the state's witnesses at the suppression hearing provide more than sufficient evidence to support the trial judge's conclusion.

This issue is without merit.

## III.

 Appellant next alleges that the trial court improperly permitted the state to argue in its opening statement that appellant "execute[d]" the victim. Appellant argues that this statement was argumentative and inflammatory and resulted in prejudice to his case. We disagree. Even assuming, arguendo, that this statement was improper, we do not believe that the statement could have affected the verdict to the prejudice of appellant. T.R.A.P. 36(b).

This issue is without merit.

## IV.

 Appellant next complains that the trial court erred in allowing testimony concerning alleged threats made by him on the evening of the shooting. Joe Greer, a cousin of the victim, testified that he was present at the scene prior to the time of the killing. He and appellant were shooting dice when an argument broke out over who had won a point. During the argument, appellant stated, "I'm going to jail and somebody's going to go to hell tonight because I'm going to kill me a m____ f____." This occurred approximately two hours before the shooting of the victim.

We believe the testimony concerning the alleged threat to be relevant and admissible in this case. Tennessee Rules of Evidence, Rule 803(3)'s state of mind hearsay exception admits declarations of existing mental state to prove future conduct. *See* Paine, *Tenn. Law of Evidence,* § 803(3).4 (2d ed. 1990). Although a threat by the accused to kill or injure a person other than the victim is ordinarily inadmissible, threats against a class of persons of whom the victim is a member are admissible to show the state of mind of the accused. *Hull v. State,* 553 S.W.2d 90, 93 (Tenn.Crim.App.1977).

In this case, the appellant's threat, while not directed specifically at the victim, went to the group of individuals gathered together that night drinking and gambling. The statement is relevant in showing appellant's intent at the time. *See* Tenn.R.Evid. 803(3). Additionally, we find this evidence to be more probative than prejudicial. The trial

court properly allowed this testimony into evidence.

## V.

Appellant next complains that the testimony of Dr. Samuel Craddock, a clinical psychologist, concerning the insanity defense wrongly invaded the province of the jury. On cross-examination, the state questioned Dr. Craddock about the legal elements of the insanity defense and whether, in his opinion, the appellant was insane. The questioning occurred over the objection of defense counsel. Appellant argues that allowing the doctor to give his opinion as to the proper application of law to the facts was in contravention of Article I, Section 19 of the Constitution of the State of Tennessee, which provides, in part, that in all criminal cases, "the jury shall have a right to determine the law and the facts, under the direction of the court. . . ." He contends that because of Dr. Craddock's testimony on cross-examination, the trial court erringly failed to charge the jury with the insanity defense.

■ The appellant failed to raise this issue in his motion for new trial. As such, the issue is waived except for purposes of plain error review. *State v. Baker*, 785 S.W.2d 132 (Tenn.1989); T.R.A.P. 3(e).

■ The law presumes the sanity of an accused. *Brooks v. State*, 489 S.W.2d 70, 72 (Tenn.Crim.App.1972). If any evidence introduced during the course of trial creates a reasonable doubt on the issue, the burden of proof shifts from the defendant to the state; the state must then establish the defendant's sanity beyond a reasonable doubt. *Graham v. State*, 547 S.W.2d 531, 544 (Tenn.1977). In this case, the State of Tennessee Department of Mental Health, pursuant to court order, evaluated appellant prior to trial. Appellant was tested for a 66–day period, and results indicated that he had a paranoid personality, though not to the level of psychosis. Dr. Craddock, who supervised the testing, stated that in his opinion appellant's reasoning and judgment were impaired. However, he also testified that appellant did not meet the criteria for an insanity defense and that he was competent to stand trial. This was the only expert testimony as to appellant's sanity.

There is no prohibition on a properly qualified expert from offering his opinion on the issue of an accused's insanity. *See, e.g., State v. Alley*, 776 S.W.2d 506, 510–11 (Tenn.1989); *State v. Taylor*, 645 S.W.2d 759, 762 (Tenn. Crim.App.1982). The court properly admitted Dr. Craddock's testimony on cross-examination. Additionally, we do not find plain error in the trial court's failure to instruct the jury on the insanity defense.

## VI.

■ Appellant next argues that the trial court erred in excluding evidence corroborating his claim that the victim was the first aggressor. Specifically, the trial court rejected the introduction of evidence through a witness, Melanie Mehlenbacher, about an incident occurring between the victim and her in 1987. Ms. Mehlenbacher testified that while in high school the victim had harassed her for about three weeks by bumping her in the hall, verbally abusing her, and striking her with his fists. The court ruled this testimony inadmissible because the prejudicial effect and confusion outweighed the probative value of the proffered testimony.

Rule 404(a) of the Tennessee Rules of Evidence generally prohibits the use of evidence of a person's character or trait of character for the purpose of proving action in conformity therewith. As an exception, Rule 404(a)(2) permits an accused to offer evidence of a pertinent character trait of the victim of the crime. In this case, appellant's desired use of a witness' testimony to prove first aggression amounts to character evidence of the victim's propensity for violence. *See* Paine, *Tenn. Law of Evidence*, § 404.4 (2d ed. Supp.1991).

While such evidence is generally admissible under Rule 404(a)(2), Rule 405(a) governs the methods of proving character in this situation, and requires that proof be in the form of opinion or reputation evidence. Rule 405(a) limits proof of specific instances of conduct to cross-examination. Thus, while the appellant may offer proof of a pertinent character trait of the victim (aggressiveness), the proof must be shown by testimony in the form of opinion or reputation. Tenn.R.Evid.

**706**

405(a). In view of these rules, the court committed no error in refusing to admit Ms. Mehlenbacher's testimony concerning specific acts of violence involving the victim.

This issue is without merit.

## VII.

■■ Appellant next complains that the automatic imposition of a life sentence is unconstitutional.

Under T.C.A. § 39–13–202(b), "[a] person convicted of murder in the first degree shall be punished by death or by imprisonment for life." When the state files no notice of its intention to seek the death penalty, the result is the imposition of a life sentence upon conviction. *See* Tenn.R.Crim.P. 12.3(b).

Appellant alleges that the facts adduced in the instant case indicate the existence of factors that would constitute mitigators pursuant to T.C.A. § 40–35–113 for any offense other than first-degree murder. In all other offenses, the sentencing judge is required to consider the existence of both mitigating and enhancement factors. T.C.A. § 40–35–210. Appellant submits that the legislature's exemption of first-degree murder convictions, where the death penalty is not sought, from the operation of T.C.A. § 40–35–210 deprives him of equal protection under the law as provided by Article I, Section 8 of the Tennessee Constitution.

Additionally, appellant notes that individual liberty in Tennessee is a fundamental right for equal protection purposes. *Doe v. Norris,* 751 S.W.2d 834, 842 (Tenn.1988). Appellant alleges that T.C.A. § 39–13–202(b) impinges upon his individual liberty and consequently the state must show that "its classification has been precisely tailored to serve a compelling government interest." *Id.*

We find *Doe* to be inapplicable in this case, and rely instead on *State v. Russell,* 866 S.W.2d 578 (Tenn.Crim.App.1991). In *Russell,* our Court addressed the issue of whether the habitual criminal statute deprives a person of equal protection under Article I, Section 8 of the Tennessee Constitution. This Court found that the defendant was not contesting the fact that the state may rightfully deprive him of individual liberty, but

was contesting only the length of his deprivation. We also find no suspect classification or fundamental right at stake in the instant case, and limit our inquiry to a rational basis review. Under such a test, a classification will be upheld if it is rationally related to a legitimate governmental interest. *See United States v. Brookins,* 383 F.Supp. 1212 (D.N.J.1974), *aff'd,* 524 F.2d 1404 (3d Cir. 1975).

Upon review, we do not find that the automatic imposition of a life sentence upon a conviction of first-degree murder, where the death penalty is not sought, to be arbitrary or irrational.

This issue is without merit.

## VIII.

■■ In his final issue, appellant claims that the jury charge regarding premeditation and deliberation constitutes plain and prejudicial error. Appellant bases his argument on our Supreme Court's ruling in *State v. Brown,* 836 S.W.2d 530 (Tenn.1992). In *Brown,* the court held that deliberation requires some time interval between the intention to kill and the act itself:

It is consistent with the murder statute and with case law in Tennessee to instruct the jury in a first-degree murder case that no specific period of time need elapse between the defendant's formulation of the design to kill and the execution of that plan, but we conclude that it is prudent to abandon an instruction that tells the jury that "premeditation may be formed in an instant. . . ." [It] is now abundantly clear that the deliberation necessary to establish first-degree murder *cannot* be formed in an instant. . . .

836 S.W.2d at 543.

In this case, the trial court gave the standard jury instruction for first-degree murder. A deliberate act was defined as one performed with cool purpose. The instruction on premeditation was more specific and stated in part that premeditation "may be conceived and deliberately formed in an instant." We do not find this instruction to constitute plain error. In an unreported case, our Court recently stated that "the court's di-

rective on the premeditation instruction was directory in nature. The *Brown* decision was based not upon an erroneous premeditation charge but upon an absence of evidence of deliberation. Under these circumstances, we doubt that the instruction that premeditation may be 'formed in an instant' was plain error...." *State v. Hassell,* C.C.A. No. 02–C–01–9202–CR–00038, 1992 WL 386311 (Tenn. Crim.App., Jackson, December 30, 1992).

We also review this case to determine whether the evidence is sufficient to support a finding of both premeditation and deliberation consistent with the *Brown* decision. The facts show that after the victim and appellant argued over a dice game, they stood around for a few moments. Each party then walked away in separate directions. Appellant got a gun from his friend. A shot was fired, and appellant was seen running up the street towards the victim. Appellant shot the victim in the head. Although the time frame was brief, we believe that the evidence is sufficient to support a finding of first-degree murder. The facts suggest a design to kill and the presence of cool purpose. Premeditation and deliberation are questions of fact which may be inferred by the jury from the circumstances of a homicide. *Brown,* 836 S.W.2d at 541–42. After viewing the evidence in a light most favorable to the prosecution, we believe that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Duncan,* 698 S.W.2d 63 (Tenn.1985).

## CONCLUSION

The judgment of the trial court is affirmed.

JONES and BIRCH, JJ., concur.