IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 22, 2000

## STATE OF TENNESSEE v. JAMES WESLEY OSBORNE

**Direct Appeal from the Circuit Court for Jefferson County**
**No. 6592     O. Duane Slone, Judge**

---

**No. E1999-01071-CCA-R3-CD**
**June 14, 2001**

---

The Defendant, James Wesley Osborne, was convicted by a Jefferson County jury of first degree murder. The Defendant was sentenced to life imprisonment. The Defendant appeals, arguing the following: (1) that there was insufficient evidence to convict him of first degree premeditated murder, (2) that the trial court's manner of jury selection was in violation of Rule 24(c) of the Tennessee Rules of Criminal Procedure, (3) that the trial court erred by admitting into evidence photographs of a serrated knife found in the victim's home and photographs of two bayonets found in the Defendant's vehicle, (4) that the trial court erred by admitting into evidence an order of protection obtained by the victim against the Defendant and previous threats made by the Defendant to the victim and members of her family, (5) that the trial court erred by admitting into evidence testimony that the victim hid the Defendant's gun collection shortly before she was killed; (6) that the trial court erred by allowing autopsy photographs of the victim to be admitted into evidence, and (7) that the trial court erred in denying the Defendant's request for a voluntary manslaughter jury instruction. Finding no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, J., joined. DAVID H. WELLES, J., not participating.

Edward C. Miller, Public Defender, Dandridge, Tennessee, for the appellant, James Wesley Osborne.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Alfred C. Schmutzer, Jr., District Attorney General; and Charles L. Murphy, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

I. FACTS

On July 21, 1998, the victim, Diana Osborne, filed for a divorce from the Defendant. Before filing for divorce, the victim left her home and did not tell the Defendant where she was going. The couple had been married for approximately twenty-eight years. The divorce papers were served on the Defendant on July 22, 1998. The victim also obtained an order of protection which was served on the Defendant on July 27, 1998. The victim returned to her home on the day that the Order of Protection was served on the Defendant, and two days later, on July 29, 1999, the Defendant killed the victim in her home.

On the day of her death, the victim called 911 from her residence. Denise Lemons, a 911 dispatcher, authenticated the tape and transcript of the call. During the call, there was an exchange between the victim and the Defendant in which the victim pleaded for the Defendant to leave and asked the Defendant, "What did I do?" The Defendant replied "You're divorcing me."

Nancy Kay Hendrix, a deputy with the Jefferson County Sheriff's Department, was the first officer to arrive on the scene. Hendrix testified that when she approached the trailer where the victim lived, a young boy walked up to her and pointed towards the back of the house. Hendrix testified that the sliding glass door in the rear of the house was shattered. Hendrix then entered the house and found the Defendant leaning up against a couch next to the victim, who appeared to be dead. Hendrix testified that the Defendant was holding a knife in his left hand and waving it in the air. The Defendant then cut his own throat. Hendrix testified that she found a serrated knife under the right side of the victim's body.

G. W. "Bud" McCoig, Chief of Detectives at the Jefferson County Sheriff's Department, also responded to the call. McCoig testified that he found a hatchet by the sliding door which he believed was used to shatter the glass. McCoig also testified that another door was "crinkled where someone had bent it, trying to open it." In front of the bent door was a clothes dryer which had also been bent. McCoig testified that inside the house, the bathroom door had been pushed in and broken. McCoig testified that the sheath to the serrated knife found under the victim's body was lying in the bathroom. McCoig testified that the Defendant's truck was parked in the driveway of a deserted house some distance away from the victim's residence. Two bayonets were found inside the truck.

Dr. Cleland Blake, Forensic Pathologist and Assistant State's Chief Medical Examiner, performed the autopsy of the victim. Dr. Blake testified that the victim had "several cutting type wounds," one of which was a "slash wound across the neck" that cut through the skin, the muscles and the vessels on the right side of the neck. Dr. Blake opined that the Defendant inflicted this wound while standing behind the victim. Dr. Blake testified that in addition to the neck wound, the victim was also stabbed in the chest and a couple of times in the face. According to Dr. Blake, when the Defendant stabbed the victim in the chest, he shoved the knife in, backed off and then jabbed it in deeper, puncturing the victim's lung.

Virginia Lynn Rogers, daughter of the victim and the Defendant, testified that the victim went into hiding after filing for divorce. She testified that the victim came out of hiding two days before the murder when the order of protection was served on the Defendant. Rogers testified that

she visited the victim the day before the murder and did not see any knives lying around the house or in the closet, where they were normally kept. According to Rogers, the Defendant had a gun collection which the victim took when she went into hiding. Rogers testified that the Defendant called her a couple of weeks before the murder and told her that although the victim took the guns "that didn't protect anybody because he could buy another gun when he got his paycheck and shoot the whole family."

Wanda Bishop, the victim's stepmother, testified that the Defendant came to see her right after the victim went into hiding. Bishop testified that the Defendant kept asking her why the victim had left and where his guns were. Bishop testified that when she would not give the Defendant any information, he told Bishop that he did not need those guns because he would buy a new gun on Friday and kill both Bishop and the victim.

Finally, the Defendant testified that he went to the victim's house to beg her to let him come back home. The Defendant testified that he parked at a deserted house some distance away from the victim's residence so his father-in-law would not see him and that he walked through the woods and approached the victim's house from the rear. The Defendant admitted that he never knocked when he got to the victim's house. He testified that he knew the victim was inside, and he used a hatchet to bust the door down. When the Defendant got into the house, the victim was already on the phone with a 911 operator. The Defendant testified that he told the victim that he just wanted to talk to her, but his claimed statement was not audible on the 911 tape. The Defendant also testified that both the murder weapon and the serrated knife were lying on the coffee table when he got there. He further testified that he held one of the knives up to his own throat and that when the victim tried to stop him from cutting himself, she was accidently cut in the throat. The Defendant was unable to demonstrate in court how this could have happened. When the State questioned the Defendant about the other wounds to the victim, the Defendant became unresponsive. The Defendant admitted that the victim did not have any of those wounds when he entered the house.

## II. ANALYSIS

### A. Sufficiency of the Evidence

The Defendant argues that insufficient evidence was presented at trial to support a conviction against him for first degree murder. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this

Court substitute its inferences for those drawn by the trier of fact from the evidence. <u>Liakas v. State</u>, 286 S.W.2d 856, 859 (Tenn. 1956); <u>State v. Buggs</u>, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. <u>Liakas</u>, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. <u>State v. Evans</u>, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. <u>Id.</u>

First degree murder is the premeditated and intentional killing of another person. Tenn. Code Ann. § 39-13-202(a)(1). Once a homicide has been established, it is presumed to be second degree murder, and the State has the burden of proving premeditation to raise the offense to first degree murder. <u>State v. Hall</u>, 8 S.W.3d 593, 599 (Tenn. 1999) (citing <u>State v. Nesbit</u>, 978 S.W.2d 872, 898 (Tenn. 1998)). Premeditation is defined as "an act done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d).

> "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

<u>Id.</u> Premeditation is the process of thinking about a proposed killing before engaging in the homicidal conduct. <u>State v. Brown</u>, 836 S.W.2d 530, 540-41 (Tenn. 1992).

The existence of premeditation is a question of fact for the jury to determine and may be inferred from the circumstances surrounding the offense. <u>State v. Rosa</u>, 996 S.W.2d 833, 837 (Tenn. 1999) (citing <u>Brown</u>, 836 S.W.2d at 539)). The use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, declarations by the defendant of his intent to kill the victim, evidence of procurement of a weapon, preparations before the killing for concealment of the crime, and calmness immediately after the killing may support the existence of premeditation. <u>State v. Bland</u>, 958 S.W.2d 651, 660 (Tenn. 1997). Prior threats against the victim may also show the existence of premeditation. <u>See</u> <u>State v. Ray</u>, 880 S.W.2d 700, 704 (Tenn. Crim. App. 1993).

Viewing the evidence in the light most favorable to the State, a jury could have reasonably found that the Defendant killed the victim after the exercise of reflection and judgment. <u>See</u> Tenn. Code Ann. § 39-13-202(a)(1), (d). Just prior to the murder, the Defendant made threats against the victim to both the victim's stepmother and the victim's daughter. The Defendant admitted that he parked some distance away from the victim's residence and approached it from the rear so that the victim's father would not see him. Although the Defendant claimed that he went to see the victim so that he could beg her to let him come home, the Defendant admitted that he never even bothered

to knock on the victim's door. Instead, the Defendant took a hatchet and broke into the victim's house by busting in a door.

When the Defendant entered the house, the victim was on the phone with a 911 operator. There was no evidence on the 911 tape of the Defendant trying to talk to the victim. The Defendant cut the victim across the throat and stabbed her in the chest, stomach and face. No evidence was presented that the victim had any sort of weapon. Evidence was also presented by the State that the Defendant had made statements to both the victim's stepmother and daughter that he was going to buy a gun and kill the victim. Thus, there is nothing to indicate that the jury acted unreasonably in finding that the Defendant acted with a previously formed intent to kill when he stabbed the victim. See Tenn. Code Ann. § 39-13-202(d).

## B. Jury Selection

The Defendant argues that the trial court's system of jury selection was in violation of Rule 24(c) of the Tennessee Rules of Criminal Procedure. Specifically, the Defendant argues that the trial court improperly called more than twelve names for purposes of voir dire and then replaced jurors out of the order in which they were called.

Tennessee Rule of Criminal Procedure 24(c) states the following:

> (c) Peremptory Challenge and Procedure for Exercising. After prospective jurors have been passed for cause, counsel will submit simultaneously and in writing, to the trial judge, the name of any juror in the group of the first twelve who have been seated that either counsel elects to challenge peremptorily. Upon each submission, each counsel shall submit either a challenge or a blank sheet of paper. Neither party shall make known the fact that the party has not challenged. Replacement jurors will be seated in the panel of twelve in the order of their selection. If necessary, additional replacement jurors will then be examined for cause and, after passed, counsel will again submit simultaneously, and in writing, to the trial judge the name of any juror in the group of twelve that counsel elects to challenge peremptorily. This procedure will be followed until a full jury has been selected and accepted by counsel. Peremptory challenges may be directed to any member of the jury, and counsel shall not be limited to replacement jurors. Alternate jurors will be selected in the same manner. The trial judge will keep a list of those challenged and, if the same juror is challenged by both parties, each will be charged with the challenge. The trial judge shall not disclose to any juror the identity of the party challenging the juror.

Regarding the number of jurors seated by the trial court, the Defendant's argument is without merit. Tennessee Rules of Criminal Procedure 24(c) allows trial courts "to seat more than twelve prospective jurors for purposes of voir dire. . . ." Tenn. R. Crim. P. 24 advisory comm'n cmts. (1997).

The Defendant also argues that juror Bruce Miniat was improperly selected for the trial jury. Specifically, the Defendant argues that Miniat was placed on the jury out of the order in which he was called. Miniat was selected to be among the twelve jurors even though he was the last of the final six jurors to be called. Counsel for the Defendant pointed out to the trial court during voir dire that the jury should be filled beginning with the first replacement juror called. The trial judge responded that replacement jurors would be placed in the jury box based on how close they were sitting to the entrance. Counsel for the State responded, "[T]hat's the way we've been doing it all morning." Defense counsel made no other comments. At the hearing on the Defendant's motion for a new trial, the trial court noted that the attorneys were advised before the jury selection process that jurors would be called based on their proximity to the jury box. However, no objection was made by the Defendant until well into voir dire. Thus, the trial court properly held that defense counsel's objection to the jury selection process was waived. <u>See</u> Tenn. R. App. P. 36(a).

Trial Courts are obligated to follow the procedures set forth in Rule 24(c). Although the trial court in this case strayed from the procedure, the Defendant was not prejudiced by the deviation. The purpose of the jury selection procedure in 24(c) is to "protect the integrity of the jury system by providing a uniform and ordered method that ensures the accused a fair and impartial jury chosen from a fair cross-section of the community." <u>State v. Coleman</u>, 865 S.W.2d 455, 458 (Tenn. 1993), <u>superceded</u> <u>by</u> statute <u>as</u> <u>stated</u> <u>in</u> <u>State v. Johnny L. Smith</u>, No. 02C01-9602-CR-00061, 1997 WL 254182 (Tenn. Crim. App., Jackson, May 15, 1997). The defendant has the burden of proving prejudice to him caused by the process used in the selection of a jury. <u>Id.</u> Although the Defendant argues that one of the potential female jurors would have been more sympathetic, there is no evidence that the trial jury was unfair or partial.

## C. Photographs of Weapons

The Defendant argues that the trial court erred in allowing the State to introduce into evidence photographs of the serrated knife and two bayonets found in the Defendant's truck. Specifically, the Defendant argues that the danger of unfair prejudice outweighed the relevance of the evidence.

The admissibility of evidence is a matter within the discretion of the trial court, whose decision will not be reversed on appeal absent a showing of abuse of discretion. <u>State v. Beech</u>, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987). With certain exceptions, all relevant evidence is generally admissible. Tenn. R. Evid. 402. Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. The determination of relevancy is within the discretion of the trial court and will not be overturned absent an abuse of discretion. <u>State v. Williamson</u>, 919 S.W.2d 69, 78-79 (Tenn. Crim. App. 1995). Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . ." Tenn. R. Evid. 403.

In this case, the State argued, and the trial court agreed, that the serrated knife and the bayonets were being introduced to show the Defendant's intent and purpose. The Defendant maintained that he went to the victim's home hoping that they could reconcile. The State offered the knife and bayonets into evidence to show that the Defendant went to the victim's residence with the intent to kill her. The Defendant's possession of those weapons was used to refute the Defendant's testimony that he slashed the victim's throat by accident. The pictures of the knife and bayonets were used by the State to establish the Defendant's state of mind and counter the Defendant's argument that he went to the victim's house just to talk to her.

## D. Prior Bad Acts

The Defendant argues that the trial court erred in allowing the order of protection and previous threats by the Defendant towards the victim and her family to be admitted into evidence. The Defendant also argues that the trial court erred in admitting evidence that the victim hid the Defendant's gun collection from him. Specifically, the Defendant argues that the admission of such evidence violates Rule 404 of the Tennessee Rules of Evidence, which provides that evidence of a defendant's prior bad acts is "not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b).

In order for prior bad acts to be admissible, "[t]he court must find on 'evidence heard outside the jury's presence' that the evidence is relevant to a 'material issue' and that the probative value of the evidence is not 'outweighed by the danger' that the evidence will cause unfair prejudice." State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997) (citing Tenn. R. Evid. 404(b)(1)-(3); State v. McCary, 922 S.W.2d 511, 513-14 (Tenn. 1996)). Evidence of prior bad acts, crimes or wrongs may be admissible to show the defendant's intent or motive. State v. Hall, 958 S.W.2d 679, 707 (Tenn. 1997). Prior threats by a defendant against the victim may be admitted into evidence to show the state of mind of the accused. Ray, 880 S.W.2d at 704.

In this case, the evidence of a prior order of protection and threats against the victim were used to establish the Defendant's motive and intent. The Defendant argued at trial that the death of the victim was the result of an accident, although the Defendant killed the victim just two weeks after the victim filed for a divorce and just two days after the victim obtained the order of protection. This evidence was properly admitted show the Defendant's intent and motive, and to rebut the Defendant's argument that the victim's death was an accident. However, we have concluded that the trial court erred by allowing into evidence the testimony of Virginia Rogers (daughter of the victim and the Defendant) that the victim hid the Defendant's gun collection. This statement was offered to show the victim's state of mind rather than the Defendant's state of mind, and was therefore improperly admitted. State v. Leming, 3 S.W.3d 7, 18 (Tenn. Crim. App. 1998). In light of the entire record in this case, we conclude that this error was clearly harmless. See T.R.A.P. 36(b); Tenn. R. Crim. P. 52(a).

## E. Autopsy Photographs

The Defendant argues that the trial court erred in allowing autopsy photographs of the victim to be admitted into evidence. It is within the discretion of the trial court to admit photographs into evidence, and such a ruling shall not be reversed absent a clear showing of abuse. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). Evidence shall be excluded where the probative value is substantially outweighed by the danger of unfair prejudice. Tenn. R. Evid. 403. Because the probative value of the photographs outweighs any potential prejudicial effects, we find that the trial court correctly allowed the photographs to be admitted into evidence. The Tennessee Supreme Court has held that photographs of a corpse are "admissible in murder prosecutions if they are relevant to the issues on trial, notwithstanding their gruesome and horrifying character." Banks, 564 S.W.2d at 950-51. However, where medical testimony adequately describes the degree or extent of injuries, such photographs should generally be excluded. State v. Collins, 986 S.W.2d 13, 21 (Tenn. Crim. App. 1998).

In this case, the autopsy photographs were used by the State to show that the killing was intentional. The Defendant argued that the death of the victim was an accident. However, the medical examiner used the photographs to show that the Defendant must have slashed the victim's neck from behind. This testimony, with the aid of the photographs, rebutted the Defendant's testimony that he was in front of the victim and that she grabbed the knife and cut herself. The photographs also help establish the brutality of the Defendant's actions. The photographs reveal that the victim was cut twice in the face, slashed across the throat, and stabbed in the chest and armpit area. The photographs were properly admitted by the trial court to show premeditation and intent, as well as to illustrate the testimony of the medical examiner as to how the wounds occurred.

## F. Jury Instruction

The Defendant argues that the trial court erred in denying his request for a voluntary manslaughter instruction. Our supreme court, in State v. Burns, 6 S.W.2d 453 (Tenn. 1999), adopted the following two-step process for determining if the evidence justifies a jury instruction on the lesser-included offense:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id. at 469.

The Defendant was indicted for first degree murder, which is the "premeditated and intentional or knowing killing of another." Tenn. Code Ann. § 39-13-202(a). Voluntary manslaughter differs from first degree premeditated murder in that it is an "intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Id. § 39-13-211(a). Voluntary manslaughter is

a lesser-included offense of first degree murder. State v. Dominy, 6 S.W.3d 472, 477 n. 9 (Tenn. 1999). However, trial courts are not required to instruct the jury on all lesser-included offenses of the charged offense. State v. Robert Lee Pattee, No. M2000-00257-CCA-R3-CD, 2001 WL 467903, at *10 (Tenn. Crim. App., Nashville, May 3, 2001).

The proof in this case did not support the lesser charge of voluntary manslaughter. There was no evidence in the record which reasonable minds could accept as to the lesser-included offense. See Burns, 6 S.W.3d at 469. The State presented evidence supporting a charge of first degree murder. The Defendant, however, argued that the victim's death was accidental. At no time did the Defendant argue that he killed the victim in anger. No evidence was presented that the death of the victim was the result of adequate provocation. For these reasons, we conclude that the trial court properly declined to instruct the jury as to the lesser-included offense of voluntary manslaughter.

Accordingly, the judgment of the trial court is AFFIRMED.


_____
ROBERT W. WEDEMEYER, JUDGE