# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### September 14, 2004 Session

## STATE OF TENNESSEE v. CURTIS TATE

### Direct Appeal from the Criminal Court for Shelby County
### No. 01-02543      James C. Beasley, Jr., Judge

---

### No. W2003-00217-CCA-R3-CD  - Filed April 22, 2005

---

The appellant, Curtis Tate, was convicted by a jury in the Shelby County Criminal Court of second degree murder.  Following a hearing, the trial court sentenced the appellant to twenty years incarceration in the Tennessee Department of Correction.  On appeal, the appellant contends that (1) "[p]lain error exists in the record in that the two material and crucial witnesses were not called at trial"; (2) the trial court's instructions to the jury were incomplete and misleading; (3) the trial court erred by instructing the jury on flight; (4) the evidence was insufficient to sustain the appellant's conviction; and (5) the sentence imposed by the trial court was excessive.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

James O. Marty (on appeal) and Steven M. Temple (at trial), Memphis, Tennessee, for the appellant, Curtis Tate.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Linda Kirklen and Paul Hagerman, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

The instant case arises from the shooting death of the victim, Stephen Ward.  At approximately 11:00 p.m. on November 8, 2000, the victim's brother, Michael Ward, was awakened by the victim as he arrived home from work.  The victim ran into the house, screaming that Artavius Thompson had attempted to force his vehicle off the road.  Seconds later, Thompson arrived at the Wards' house and parked his "light-colored" Toyota in the driveway.  The victim and Michael ran

to the front door and looked out.[1]  Michael observed four individuals, including Thompson, in the vehicle.  The other individuals were later identified as Terrell McGaughy, Shaquita Clemons, and the appellant.  As the victim ran outside to confront Thompson, Michael returned to his room to put on his shoes.  Michael heard the victim and Thompson arguing.  Thereafter, a fight ensued.

When Michael finished putting on his shoes, he ran outside.  McGaughy got out of the passenger side of the vehicle and confronted Michael.  After the men "had a few words," McGaughy ran to the driver's side of the vehicle and drove the car onto the street.  He then got out of the car and approached Michael, who was standing in the street.  McGaughy attempted to strike Michael, and the two men began fighting.  When the victim observed Michael and McGaughy fighting, he ran to assist Michael.  The victim chased McGaughy around the front of Thompson's vehicle, and Michael ran towards the rear of the vehicle.  When McGaughy reached the passenger door, he opened the door and "d[o]ve into the car."  As the victim attempted to grab McGaughy, the appellant, who was sitting in the backseat, said, "Hey, man, you got my friend f***ed up."  The appellant was referring to Thompson, who, as a result of the fight, was lying in the street.  The appellant then shot the victim.

According to Michael, he and the victim were knocked to the ground by the shotgun blast.  As Michael stood up, he saw the victim grab his chest and fall to his knees.  Michael grabbed the victim and dragged him towards the house.  When they reached the driveway, the victim pushed Michael away and fell to the ground.  Michael ran into the house and retrieved his .380 caliber pistol from underneath his bed.  When he returned, Thompson was getting into his vehicle and driving away.  Michael fired three shots at the vehicle and then ran to the victim and held him as he died.  After the victim died, Michael ran behind the house and threw his pistol over the fence.

At trial, Michael's girlfriend, Lacy Jackson, testified that on the night of the instant offense she was spending the night with Michael.  She heard the victim outside arguing with Thompson.  According to Jackson, the victim asked Thompson, "[W]hy you try to run me off the road."  Thompson denied that he attempted to force the victim from the road.  Thereafter, Jackson looked out the front door.  Thompson's vehicle was parked in the driveway, and the victim and Thompson were fighting in the yard.  Jackson went upstairs to wake the victim's mother, Carolyn Ward.  When Jackson came back downstairs, Thompson's vehicle was parked in the street.  Michael was standing in the street, and the victim and Thompson were fighting.  Suddenly, Jackson heard a gunshot and saw a "flash" from the backseat of Thompson's vehicle.  Michael and the victim fell to the ground.  They then stood and ran towards the house before again falling to the ground.  Michael shouted that the victim had been shot.  As Jackson telephoned 911, she heard three more gunshots.

The victim's mother, Ms. Carolyn Ward, testified at trial that on the night of the instant offense she was awakened by Jackson who was upset because "some guys had come to the house."  Ms. Ward followed Jackson downstairs.  Michael put on a pair of shorts and went outside.  Ms.

---

[1]Because the victim and his brother share the same last name, we have elected to refer to Stephen Ward as "the victim" and Michael Ward as "Michael."

-2-

Ward looked out the front door and observed Thompson's vehicle parked in the driveway. Nearby, Thompson and the victim were fighting. Ms. Ward shouted at the victim and Michael to come inside the house. Thereafter, she made several unsuccessful attempts to telephone 911. After one such attempt, Ms. Ward heard a gunshot and ran to the front door. She observed Michael "somewhat carrying" the victim to the house, shouting, "[You] didn't have to shoot him." Ms. Ward went to the back bedroom and telephoned 911. She then heard several more gunshots. When she returned to the front door, the victim, who had been shot, was lying in Michael's arms. He died at the scene.

At trial, Randy Booker testified that on November 9, 2000, McGaughey and three other individuals came to his apartment and asked him to hide a sawed-off shotgun until the next morning. Booker agreed and placed the shotgun under his mattress. Homicide officers subsequently came to his apartment and retrieved the weapon.

Officers discovered Michael's .380 caliber pistol near the fence behind the Wards' house. The pistol had two live rounds in the cartridge. Sergeant T.J. Helldorfer of the Memphis Police Department testified at trial that during his investigation he interviewed Thompson. Thompson directed officers to Booker's apartment where the murder weapon was located. Thompson also provided directions to the Autumn Woods Apartments where the appellant's father lived. When officers arrived at the apartment, the appellant answered the door and was taken into custody.

Based upon the foregoing evidence, the jury convicted the appellant of second degree murder. Following a sentencing hearing, the trial court sentenced the appellant to twenty years incarceration. The appellant now brings this appeal, arguing that (1) "[p]lain error exists in the record in that the two material and crucial witnesses were not called at trial"; (2) the trial court's instructions to the jury were incomplete and misleading; (3) the trial court erred by instructing the jury on flight; (4) the evidence was insufficient to sustain the appellant's conviction; and (5) the sentence imposed by the trial court was excessive.

## II. Analysis

### A. Failure to Call Witnesses

As his first issue, the appellant asserts that "trial counsel had available at trial two material witnesses, Shaquita Clemmons and Artavius Thompson, both of whom were present in the car when the shooting occurred. Further, the appellant asserts that neither were called at trial." However, this issue was not raised in the appellant's motion for new trial. Accordingly, the issue is waived on appeal. See Tenn. R. App. P. 3(e); State v. Ray, 880 S.W.2d 700, 705 (Tenn. Crim. App. 1993).

Nevertheless, the appellant contends that this court should address his claim under the plain error doctrine. Tennessee Rule of Criminal Procedure 52(b) provides that this court may address "[a]n error which has affected the substantial rights of an accused . . . at any time, even though not raised in the motion for a new trial . . . where necessary to do substantial justice." See also Tenn.

R. Evid. 103(d). We may only consider an issue as plain error when all five of the following factors are met:

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached; (c)
> a substantial right of the accused must have been adversely affected;
> (d) the accused did not waive the issue for tactical reasons; and (e)
> consideration of the error is "necessary to do substantial justice."

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); see also State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the Adkisson test for determining plain error). Furthermore, the "'"plain error" must be of such a great magnitude that it probably changed the outcome of the trial.'" Adkisson, 899 S.W.2d at 642 (quoting United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988)). Based upon the record before us, we cannot conclude that the appellant satisfied the test for review as plain error.

In the instant case, the appellant retained substitute counsel for the purposes of appeal after learning that trial counsel had been suspended from the practice of law. The appellant raised the issue regarding the witnesses' testimony for the first time on direct appeal. Because the issue would be better addressed in a post-conviction proceeding where the appellant will have the opportunity to argue the merits of his claim at an evidentiary hearing, we decline to review this issue as plain error. See State v. Bobby Joe Seay, No. 01C01-9302-CR-00059, 1993 WL 503702, at *2 (Tenn. Crim. App. at Nashville, Dec. 9, 1993).

## B. Jury Instructions

As his second and third issues, the appellant challenges the correctness of the trial court's jury instructions. Specifically, the appellant contends that the trial court's "instructions were incomplete, misleading and confusing to the jury." Additionally, the appellant claims that the trial court erred in giving the jury an instruction on flight. However, the appellant again failed to raise these issues in his motion for new trial. Accordingly, these issues are likewise waived on appeal. See Tenn. R. App. P. 3(e); Ray, 880 S.W.2d at 705.

## C. Sufficiency of the Evidence

The appellant next contends that the evidence was insufficient to sustain his conviction of second degree murder.[2] When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789

---

[2]The appellant's entire argument is as follows: "Based upon proof at trial and the Sentencing Hearing, counsel would argue the issue of sufficiency of the evidence under the Plain Error Doctrine in assignment #1."

(1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. Id. This court will not reweigh or reevaluate the evidence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Second degree murder is defined as "[a] knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1) (1997). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b) (1997).

Viewed in the light most favorable to the State, the evidence at trial revealed that on the night of the instant offense, the appellant rode to the victim's house with Thompson, McGaughy, and Clemons. When they arrived at the victim's house, the victim came outside to confront Thompson, asking Thompson why he attempted to force his vehicle off the road. Thompson denied the allegation, and the two men began fighting. Thereafter, Michael went outside and was confronted by McGaughy. When the victim observed the altercation between Michael and McGaughy, he went to assist Michael, leaving Thompson lying on the street. The victim and Michael chased McGaughey around Thompson's vehicle. When the victim attempted to prevent McGaughy from entering the vehicle, the appellant shot the victim with a sawed-off shotgun. We conclude that the evidence was sufficient to convict the appellant of second degree murder.

D. Sentence

When an appellant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d) (2003). However, this presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the record demonstrates that the trial court failed to consider the sentencing principles and the relevant facts and circumstances, review of the sentence will be purely de novo. Id.

In conducting our review, this court must consider (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to the sentencing alternatives; (4) the nature and characteristics of the offenses; (5) any mitigating or enhancement factors; (6) any statements made by the appellant on his own behalf; and (7) the appellant's potential for rehabilitation or treatment. See Tenn. Code Ann. § 40-35-102, -103, -210 (2003); see also Ashby, 823 S.W.2d at 168. The burden is on the appellant

to show that the sentence is improper.  See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

The appellant was sentenced as a Range I standard offender, for which the applicable range for a Class A felony is fifteen to twenty-five years.  See Tenn. Code Ann. § 40-35-112(a)(1) (2003). The presumptive sentence for a Class A felony is the midpoint within the applicable range if there are no enhancement or mitigating factors.  See Tenn. Code Ann. § 40-35-210(c).  If the trial court finds that such factors do exist, the court must start at the presumptive sentence, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors.  See Tenn. Code Ann. § 40-35-210(e). There is no mathematical formula for valuating factors to calculate the appropriate sentence.  See State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996).  "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the trial court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record."  Id. at 475-76.

In sentencing the appellant, the trial court applied the following enhancement factors:

> (7) The personal injury inflicted upon . . . the victim was particularly great;

> (10) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;

> (11) The defendant had no hesitation about committing a crime when the risk to human life was high; and

> (17) The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

Tenn. Code Ann. § 40-35-114 (2003).  The trial court afforded no weight to enhancement factors (7) and (11), finding that these factors were inherent in the offense of second degree murder.  The trial court afforded some weight to enhancement factor (17), finding, "[U]nder the circumstances and close quarters inside an automobile occupied by either three or four people, with two people standing immediately adjacent, the firing of a shotgun, the potential for bodily injury to a victim other than the intended victim is great."  Finally, the trial court afforded great weight to enhancement factor (10), finding that "[t]here's just no justification . . . for possessing or carrying around a sawed-off shotgun."

Thereafter, the trial court applied the following mitigating factors:

> (2) The defendant acted under strong provocation;

(6) The defendant, because of youth or old age, lacked substantial judgment in committing the offense; and

(11) The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct.

Tenn. Code Ann. § 40-35-113 (2003). Based upon these findings, the trial court sentenced the appellant to the presumptive minimum sentence of twenty years incarceration, stating, "I don't find that the mitigating factors are sufficient to outweigh the enhancing factors to reduce [the sentence] into the lower end range. And I don't find that the enhancement factors outweigh the mitigating factors sufficient to increase it into the upper range."

On appeal, the appellant contends that the trial court should have afforded the mitigating factors greater weight and reduced his sentence to fifteen years, the minimum within the range. See Tenn. Code Ann. § 40-35-112(a)(1). However, as previously stated, the weight to be afforded a factor is left to the trial court's discretion as long as the trial court complied with the sentencing principles and its findings are adequately supported by the record. See Boggs, 932 S.W.2d at 475-76. We find no error in the trial court's application of mitigating factors.

While the appellant does not challenge the trial court's application of enhancement factors, upon de novo review we conclude that the trial court misapplied certain enhancement factors. Moreover, prior to our review on appeal, the United States Supreme Court released its decision in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004). This court has recognized that Blakely "calls into question the continuing validity of our current sentencing scheme." State v. Julius E. Smith, No. E2003-01059-CCA-R3-CD, 2004 WL 1606998, at *4 (Tenn. Crim. App. at Knoxville, July 19, 2004); see also State v. Michael Wayne Poe, No. E2003-00417-CCA-R3-CD, 2004 WL 1607002, at *9 (Tenn. Crim. App. at Knoxville, July 19, 2004). In Blakely, 542 U.S. at __, 124 S. Ct. at 2537 (citations omitted), the Supreme Court held that

> the "statutory maximum" for Apprendi [v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000)] purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

First, we will address the trial court's application of enhancement factors (7) and (17). Again, we note that enhancement factor (7) relates to great bodily injury. Tenn. Code Ann. § 40-35-

114 (7). Enhancement factor (17) provides that a sentence may be enhanced when "[t]he crime was committed under circumstances under which the potential for bodily injury to a victim was great." Id. at (17). Previously, this court concluded that both of these enhancement factors are inherent in the offense of second degree murder. State v. James Johnson, No. W2003-02009-CCA-R3-CD, 2004 WL 2378256, at *13 (Tenn. Crim. App. at Jackson, Oct. 20, 2004); State v. Michael Scott Brogan, No. E2001-00712-CCA-R3-CD, 2002 WL 1723702, at *5 (Tenn. Crim. App. at Knoxville, July 25, 2002).

Moreover, we note that the trial court applied enhancement factor (17) based upon its finding that "the potential for bodily injury to a victim other than the intended victim [was] great." However, enhancement factor (17) may not be applied to enhance a sentence where a defendant is convicted of committing an offense against a specific, named victim. State v. Imfeld, 70 S.W.3d 698, 706 (Tenn. 2002). "There is nothing in the statutory language of the enhancement factor to indicate that it applies to potential victims or that it applies simply because the offense was committed in the presence of other individuals." Id. In the instant case, the appellant was convicted of the second degree murder of a specific, named victim. Accordingly, we conclude that the trial court improperly applied enhancement factors (7) and (17).

Enhancement factor (11), the defendant had no hesitation about committing a crime when the risk to human life was high, may be applied when there is a risk to the life of someone other than the victim. State v. Bingham, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995). Prior to Blakely, the application of enhancement factor (11) would have been appropriate in the instant case. However, because the facts underlying the application of enhancement factor (11) were not reflected in the jury verdict or admitted by the appellant, Blakely precludes its application. State v. Ambreco Shaw, No. W2003-02822-CCA-R3-CD, 2004 WL 2191044, at *9 (Tenn. Crim. App. at Jackson, Sept. 28, 2004). Nevertheless, in light of the fact that the trial court sentenced the appellant to the presumptive minimum sentence, the error was harmless.

Regarding enhancement factor (10), we conclude that the trial court committed no error in applying this factor and affording the factor great weight. As this court has previously noted, "[t]he use of a firearm is neither an element of second degree murder nor inherent in the offense." State v. Hampton, 24 S.W.3d 823, 832 (Tenn. Crim. App. 2000). Moreover, the appellant admitted at sentencing that he used a shotgun to kill the victim. Specifically, the appellant stated that when the victim reached into the car window and attempted to strike the appellant, the apellant "pulled [the shotgun] up, looked over there and shot." Accordingly, the trial court's application of enhancement factor (10) did not violate the dictates of Blakely.

Although we have determined that the trial court misapplied enhancement factors (7), (11), and (17), this does not necessarily lead to a reduction in the appellant's sentence. See State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000). In light of the great weight afforded enhancement factor (10) by the trial court, we conclude that the trial court committed no error by refusing to reduce the appellant's sentence to fifteen years, the minimum in the range. This issue is without merit.

### III. Conclusion

Finding no reversible error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE